[Cite as *State v. Donaldson*, 2014-Ohio-3621.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No.  WD-13-038

        Appellee                                  Trial Court No.  2012CR0645

v.

Kevin J. Donaldson                          **DECISION AND JUDGMENT**

        Appellant                                Decided:  August 22, 2014

* * * * *

Paul Dobson, Wood County Prosecuting Attorney,
Gwen Howe-Gebers, and Jacqueline M. Kirian,
Assistant Prosecuting Attorneys, for appellee.

Mollie B. Hojnicki, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Kevin Donaldson, appeals his conviction in the Wood County

Court of Common Pleas, on two counts of trafficking in persons and two counts of

promoting prostitution. All counts carried specifications. For the reasons that follow, we affirm.

**{¶ 2}** A jury trial commenced on April 22, 2012. Detective Peter Swartz of the Toledo Police Department, testified that he is currently assigned to the Northwest Ohio Violent Crimes Against Children Task Force. As part of his job duties, he participates in undercover investigations of prostitution. That is what he was doing on November 8, 2011, when he contacted two young women who had advertised services under the "escort" section of a website known as Backpage.com.

**{¶ 3}** Detective Swartz testified that the task force obtained four rooms in a local Bowling Green, Ohio hotel. One room was for Swartz, one room was for a female undercover officer, one room was for technical equipment and one room was for arrests and interviews. Swartz called a woman named "Asia" from the advertisement and asked her how much it would be for her and her friend "Hazel" to come to his hotel room for sex. Asia told him it would be $300 for the both of them. Swartz agreed to the price and Asia told him they were on their way. When they arrived at the hotel, Asia told Swartz to put the $300 on the bed. The women began to take their clothes off when Swartz signaled his fellow officers to enter the room and detain them.

**{¶ 4}** Wood County sheriff's detective Christopher Klewer testified that on November 8, he also participated in the undercover investigation. Specifically, he was stationed outside of the hotel in an unmarked vehicle. The officers inside the hotel

2.

advised him to watch for two young women. Soon, he watched as two young women walked across the parking lot and entered the hotel. He testified that from his experience in working on many undercover prostitution stings, the prostitutes are usually dropped off by someone else. He then turned his attention to the area around him hoping to find a suspicious car. In a nearby parking lot, he noticed a Volkswagen with Michigan plates. He testified that the car caught his attention because it was the only occupied car in the lot that appeared to have a direct view to the hotel. He testified that he watched the car for approximately ten minutes before he was notified that the women had been detained. At that point, the Volkswagen exited the parking lot and Klewer began to follow it. When the Volkswagen driver failed to signal for a left turn, Klewer notified a nearby marked sheriff's car of the violation. The marked car pulled the Volkswagen over and Klewer followed behind.

{¶ 5} Klewer testified that he initially approached the passenger side of the vehicle where he smelled a distinct odor of marijuana and noticed that the passenger was covered in green, vegetative material. He also had a bag of marijuana in his pocket. Both occupants were arrested. The driver was identified as appellant. Klewer testified that he read appellant his Miranda rights and then asked him about the women. Appellant told him that he and the women were from New York and that the women had paid him $50 to bring them to the hotel. He told Klewer he did not know why the women wanted to go to the hotel.

3.

**{¶ 6}** On November 21, 2012, appellant was indicted on two counts of trafficking in persons, violations of R.C 2905.32(A) and first degree felonies and, two counts of promoting prostitution, violations of R.C. 2907.22(A)(3) and felonies of the fourth degree. A jury found him guilty on all counts. He was sentenced to 12 years in prison. He now appeals setting forth the following assignments of error:

    I. The trial court erred when it admitted impermissible expert testimony.

    II. The trial court erred when it admitted hearsay and other improper evidence over objection.

    III. The state committed prosecutorial misconduct by refusing to grant immunity to its own witness for the purpose of preventing the jury from hearing exculpatory evidence and denying appellant his right to confront witnesses.

    IV. The trial court abused its discretion when it allowed the state to present extrinsic evidence of a prior inconsistent statement in violation of Evid.R. 613.

**{¶ 7}** In his first assignment of error, appellant contends that the court erred in admitting the testimony of Michigan State Police Detective Edward Price as an expert in the subculture of sex trafficking.

4.

**{¶ 8}** Evid.R. 702, which governs expert testimony, states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

**{¶ 9}** "Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion." *State v. Baston*, 85 Ohio St.3d 418, 423, 709 N.E.2d 128 (1999). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 10}** Detective Price, a 17-year veteran of the Michigan State Police, testified that he is currently assigned to the Southeast Michigan Crimes Against Children Task Force where he investigates sex trafficking and missing children cases. In particular, he has been working on sex trafficking cases since 2005. Since that time, he estimated that

5.

he has worked on hundreds of those cases and he has trained other officers to work on those cases. He stated that he has previously testified in other courts regarding the subculture of sex trafficking. At that point, the state asked the court to qualify Price as expert in sex trafficking pursuant to Evid.R. 702(A) and defense counsel objected.

{¶ 11} Out of the hearing of the jury, the state explained to the court that Price's testimony would touch on his personal experience with sex trafficking which is beyond the knowledge or experience possessed by lay persons. Because of his experience, the state argued, he is well versed in matters such as the types of sex trafficking, the relationship between the traffickers and their victims, recruitment methods and the psychological effects of trafficking on the victims. Defense counsel took exception to Price testifying about the psychological effects of trafficking as he is neither a psychologist nor a psychiatrist. Noting that the rule does not require Price to be a psychologist or psychiatrist, the court overruled defense counsel's objection and found that his testimony would be of valuable assistance to the jury in interpreting the evidence.

{¶ 12} "Courts should favor the admissibility of expert testimony whenever it is relevant and the criteria of Evid.R. 702 are met." *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332 (1998). Based on Price's unique experience and first-hand knowledge of a world few people are ever exposed to, we find that the court did not abuse its discretion in allowing Price to testify as an expert in sex trafficking. Appellant's first assignment of error is found not well-taken.

6.

{¶ 13} In his second assignment of error, appellant contends that the court erred by admitting certain evidence. First, appellant points to the admission of state's exhibit No. 32, a recording of the telephone call Detective Swartz made to "Asia." Appellant also alleges that the court erred in admitting copies of text messages between the women. Appellant claims the recording and the transcripts of the text messages amount to inadmissible hearsay. The state maintains that the recording and the transcripts were admissible pursuant to Evid.R. 801(D)(2).

{¶ 14} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2009-Ohio-1133, ¶ 4.

{¶ 15} Under Evid.R. 801(D)(2)(e), certain statements are not "hearsay." The rule states, in pertinent part:

> A statement is not hearsay if: * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

{¶ 16} The existence of a conspiracy must be established before a trial court may admit what otherwise may constitute inadmissible hearsay statements. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 100. "[T]he statement of a co-conspirator is not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." *State v. Carter*, 72 Ohio St.3d 545, 550, 651 N.E.2d 965 (1995). To establish independent proof of a conspiracy, the prosecution must provide proof: "(1) of the existence of a conspiracy; (2) of the defendant's participation in the conspiracy; (3) of the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was made in furtherance of the conspiracy." (Citation omitted.) *State v. Baker*, 137 Ohio App.3d 628, 653, 739 N.E.2d 819 (12th Dist.2000). A prima facie case is made where the evidence introduced is sufficient to support, but not compel, a particular conclusion, and which only furnishes evidence that the jury may consider and weigh, but need not accept. *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 107. (Additional citations omitted.).

{¶ 17} Conspiracy has been defined as the planning or aid in planning the commission of the charged offense or agreement that one of more of parties will engage in conduct that facilitates the commission of the charged offense. R.C. 2923.01.

{¶ 18} Before the admission of the disputed evidence, the state had shown evidence that appellant participated in a conspiracy by voluntarily transporting the

8.

women to Bowling Green for the sole purpose of engaging in illegal activity. We find this to be a sufficient prima facie case for purposes of Evid. R. 801(D)(2)(e).

{¶ 19} Next, appellant contends that the court erred in admitting the testimony of FBI agent James Hardy. Appellant contends that he impermissibly expressed his opinion on the veracity of Quawana Pirela, otherwise known as "Asia."

{¶ 20} Hardy testified that on November 8, 2011, he was the coordinator of the investigation that ultimately led to appellant's arrest. After the women were detained by law enforcement in the hotel room, Hardy interviewed both of them separately. He testified that they appeared frightened and upset.

{¶ 21} Quawana Pirela took the stand for the defense and testified that appellant had never compelled her to engage in prostitution. The state then called Hardy back to the stand. He testified that her testimony was inconsistent with the information she gave him when he initially interviewed her. When asked, based on his vast experience investigating prostitution rings, his opinion of Pirela's demeanor while on the stand, he replied:

> She appeared to me to be extremely fearful. It was very, very difficult for her to make eye contact with her pimp. And it appeared it was very difficult, even though she said things that contradicted her statement, to me it appeared very difficult for her to even come into court and be in close proximity to her pimp.

9.

{¶ 22} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Although opinion testimony regarding the truthfulness of a witness is inadmissible, a witness may give "testimony in the form of opinions or inferences * * * which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 23} Like Detective Price discussed above, Agent Hardy was also qualified by the court as an expert witness in the field of sex trafficking. Thus, we find his testimony with regards to Pirela's demeanor admissible. Moreover, his testimony was relevant in that he offered evidence of Pirela's inconsistent statements. Appellant's second assignment of error is found not well-taken.

{¶ 24} In his third assignment of error, appellant contends that the state committed prosecutorial misconduct in refusing to grant Pirela and her friend "Hazel" immunity from prosecution. When both women were called to the stand by the state, they invoked their Fifth Amendment rights against self-incrimination. Pirela later testified for the defense.

10.

**{¶ 25}** Initially, we note that it is within the trial court's discretion to grant immunity. *State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 438 N.E.2d 443 (1982). R.C. 2945.44 provides in pertinent part:

> In any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to Chapter 2981 of the Revised Code, if a witness refuses to answer or produce information on the basis of the witness's privilege against self-incrimination, the court of common pleas of the county in which the proceeding is being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:
>
> (1) The prosecuting attorney of the county in which the proceedings are being held makes a written request to the court of common pleas to order the witness to answer or produce the information, notwithstanding the witness's claim of privilege;
>
> (2) The court of common pleas informs the witness that by answering, or producing the information the witness will receive immunity under division (B) of this section.

**{¶ 26}** Prosecutorial misconduct has been defined as "conduct [which] deprives the defendant of a fair trial." *State v. Maurer,* 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).

11.

{¶ 27} The record shows that the state, in fact, made significant efforts to obtain the cooperation of the women to explore the possibility of immunity to no avail. The court noted their use of the subpoena process and their offers to provide transportation, food and lodging. When defense counsel suggested that the state conveniently created a situation where the women could be deemed unavailable as witnesses for evidentiary purposes, the court stated: "[I] think the record will support that the state has done everything in its power *** through much mashing of teeth *** getting a resolution of the immunity situation." Finding no conduct on the part of the state which deprived appellant of a fair trial, appellant's third assignment of error is found not well-taken.

{¶ 28} In his fourth assignment of error, appellant contends that the court erred in allowing the state to admit state's exhibit No. 35, a recording of Agent Hardy's interview of Pirela on November 8, which was inconsistent with her in court testimony. Evid.R. 613 provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

12.

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶ 29} We find no abuse of discretion in the court's admission of state's exhibit No. 35. In the interview, Pirela discusses her life as a prostitute and the fact that all of the money she earns must be given to appellant. This is clearly inconsistent with her testimony on the stand where she was thoroughly cross-examined. Moreover, the jury was given a limiting instruction informing them that the evidence was only to be considered for impeachment purposes. Appellant's fourth assignment of error is found not well-taken.

{¶ 30} The judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.